**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DARRYL DAVIS, et al., | : | |
| Plaintiffs, | : | Civ. No. 15-6943 (KM) (JBC) |
| | : | |
| v. | : | |
| | : | |
| SHERRY YATES, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

**I.      INTRODUCTION**

The plaintiffs, Darryl Davis and Steven Grohs, are civil detainees at the Special Treatment Unit ("STU") in Avenel, New Jersey. Plaintiffs are proceeding *pro se* with a civil rights complaint. Plaintiffs initially filed their complaint in the Superior Court of New Jersey, Law Division, Middlesex County. Defendants removed the complaint to this Court. Subsequently, plaintiffs filed a motion to remand, which was denied. Currently pending before this Court is defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6). For the following reasons, defendants' motion to dismiss is granted in part and denied in part.

**II.      STANDARD OF REVIEW**

A.  Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be raised at any time. *See Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. *See* 2

JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *See Iwanowa*, 67 F. Supp. 2d at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *See id.* The jurisdictional arguments made here are based on the allegations of the complaint. Accordingly, the Court will take the allegations of the complaint as true. *See Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

    B.  Rule 12(b)(6)

        Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Worth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly case, infra*).

        Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a

speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

Where, as here, plaintiffs are proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, it must meet some minimal standard. "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## III.   BACKGROUND

Plaintiffs' complaint names four defendants: (1) Sherry Yates – STU Administrator; (2) Sarah Davis – STU Assistant Administrator; (3) the New Jersey Department of Corrections ("NJDOC") and (4) SCO – John Doe.[1]

Plaintiff Davis states that he was placed on the third-tier of the South Unit of the STU on December 23, 2104 by defendant Doe. Plaintiff Davis was not given any blankets that were his personal property. The complaint alleges that his cell was at a temperature between fifty and sixty-five degrees.

---

[1] The first three defendants have moved for dismissal of the complaint against them and are hereinafter referred to as the "moving defendants."

Plaintiff Grohs alleges that he was locked in an "ice cold cell" between the months of October 2014 and March 2015 because there was no heat being supplied to the South Unit. Because ice cold air was being blown through the ventilation system during this time, it was turned off. The positive air pressure having been removed, twenty degree air would then blow back directly into the housing unit through a vent that was designed as an exhaust.

On December 23, 2014, defendant Sarah Davis toured the South Unit and had extra woolen blankets passed out to residents who requested them. Grohs informed Sarah Davis that he was allergic to wool and requested a cotton blanket. Sarah Davis told Grohs that she would look into providing him with a cotton blanket, but that never happened. No blankets were passed out to residents, including plaintiff Davis, on the third tier. Plaintiffs allege that "[b]oth Defendant Yates and Defendant S. Davis were aware that since October, 2014, the heating system for South Unit was in a state of disrepair and otherwise was not functioning properly." (Dkt. No. 1-1 at p.11)

The complaint asserts claims under the United States Constitution through 42 U.S.C. § 1983  and the New Jersey Constitution through the New Jersey Civil Rights Act ("NJCRA"). It seeks monetary, injunctive, and declaratory relief.

## IV.    DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a

4

> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The NJCRA is a state law analogue to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution. *See Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010). Like § 1983, the plain language of the NJCRA imposes liability on any "person" who violates a plaintiff's civil rights under color of law. In particular, the NJCRA provides in relevant part that:

> Any person who has been deprived of any ... rights ... secured by
> the Constitution or laws of the United States, or ... by the
> Constitution or laws of this State, or whose exercise or enjoyment
> of those substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by threats,
> intimidation or coercion by *a person acting under color of law*,
> may bring a civil action for damages and for injunctive or other
> appropriate relief.

N.J. STAT. ANN. § 10:6–2(c) (emphasis added). "This district has repeatedly interpreted NJCRA analogously to § 1983. *See Petit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); *see also Evans v. City of Newark*, No. 14-0120, 2016 WL 2742862, at *8 n.13 (D.N.J. May 10, 2016) (citing *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). *See also Gonzalez v. Auto Mall 46, Inc.*, 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July

2, 2012) (citing *Rezem Family Assocs., LP v. Borough of Millstone*, 30 A.3d 1061, 1067 (N.J. Super. Ct. App. Div. 2011), *certif. denied*, 208 N.J. 366, 29 A.3d 739 (2011)).

A. <u>Eleventh Amendment Immunity & "Person" Defense</u>

The moving defendants first argue that plaintiffs' § 1983 and NJCRA claims against them in their official capacities[2] are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment "is a jurisdictional bar which deprives courts of subject matter jurisdiction" over actions against a State. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). The state's immunity from suit extends to "arms" of the state, such as agencies or departments. *See Pennhurst,* 465 U.S. at 99; *Carter v. City of Philadelphia,* 181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis omitted); *see also Chisolm v. McManimon,* 275 F.3d 315, 322–23 (3d Cir. 2001) ("Eleventh Amendment immunity may be available to a state party-in-interest notwithstanding a claimant's failure to formally name the state as a defendant."). Furthermore, "a suit against a state official in his or her *official* capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1985). Accordingly, such a suit is no different from a suit against the state itself. *See id.*

The moving defendants removed this case from state to federal court. "[A] State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity." *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002). Thus, the moving defendants' removal of this action waives their Eleventh Amendment

---

[2]     Davis and Yates, as natural persons employed by the State, possess both an official and a personal capacity. The NJDOC, as a state agency, possesses only an official, not a personal, capacity.

argument. *See Lombardo v. Pennsylvania, Dep't of Public Welfare*, 540 F.3d 190, 198 (3d Cir.

2008).

Other defenses, however, are not specific to federal court, and therefore are not waived

by removal:

> *Lombardo* . . . stands for the proposition that, although a state
> waives its Eleventh Amendment immunity from suit in a federal
> court by removing, the state retains its own state sovereign
> immunity. *Id.* at 198, 198 n. 8. Thus, while a state gives up its
> claim to immunity from suit in federal court by removing an action
> from state court, it retains any defenses it would have been able to
> assert in its own courts, including sovereign immunity. *Id.* at 198-
> 99.
>
> The importance of this latter point goes not to Eleventh
> Amendment immunity from suit in a federal court, but rather to the
> personhood of some of the Defendants for the purposes of § 1983.
> Under the statute, a state, a department of a state, or a subsection of
> such a department or other organized arm of the state, is not a
> "person" subject to suit under § 1983. *Grohs v. Yatauro*, 984 F.
> Supp. 2d 273, 280-81 [(D.N.J. 2013)]. Thus, a plaintiff may not
> bring a suit under the statute against a state, one of its departments,
> or a prison operated by such a department. *Id.*; *see also Ewing v.
> Cumberland Cnty.*, No. 09-5432, 2015 WL 1384374, at *25
> (D.N.J. Mar. 25, 2015); *Brown v. New Jersey Dep't of Corr.*, No.
> 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014); *Grabow
> v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989)
> (State department of corrections and state prison facilities are not
> "persons" under § 1983).

*Love v. New Jersey Dep't of Corr.*, No. 15-4404, 2016 WL 2757738, at *4 (D.N.J. May 12,

2016).

It follows that moving defendants have not, by removing the case, waived their argument

that they are not suable "persons" under § 1983 and the NJCRA. *See Didiano v. Balicki*, No. 10-

4483, 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011) (collecting cases), *aff'd*, 488 F. App'x

634 (3d Cir. 2012). I therefore consider it.

The NJDOC is not a "person" for purposes of Section 1983 liability. *See Tulli–Makowski v. Community Educ. Ctrs., Inc.*, No. 12–6091, 2013 WL 1987219, at *3 (D.N.J. May 13, 2013) (citing *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989)); *see also Nadal v. Christie*, No. 13–5447, 2014 WL 2812164, at *4 (D.N.J. June 23, 2014). Indeed, the plaintiffs concede as much in their response to the motion to dismiss. (*See* Dkt. No. 11 atp.13) Accordingly, plaintiffs' complaint against the NJDOC fails to state a Section 1983 claim. *See Calhoun v. Young*, 288 F. App'x 47, 50 (3d Cir. 2008) (upholding dismissal of claims for monetary damages and injunctive relief against the state of New Jersey because it is not a person for purposes of § 1983) (citing *Will*, 491 U.S. at 71). The analysis is the same under the NJCRA; the NJDOC is not a suable "person." *See Didiano*, 488 F. App'x at 638-39. Accordingly, the NJDOC is entitled to dismissal of the claims against it.

Plaintiffs' "official capacity" claims against defendants Sarah Davis and Sherry Yates require a slightly different analysis. The complaint seeks monetary damages as well as injunctive and declaratory relief. To the extent the complaint seeks monetary damages from these two defendants in their official capacities,[3] such a claim would be barred. A state official sued in her official capacity for monetary damages is not a "person" for purposes of Section 1983. *See House v. Fisher*, No. 14-2133, 2016 WL 538648, at *7 (M.D. Pa. Feb. 11, 2016) (citing *Will*, 491 U.S. at 63-71); *Goode v. New Jersey Dep't of Corrections*, No. 11-6960, 2015 WL 1924409, at *10 (D.N.J. Apr. 28, 2015) (state officials sued in official capacities for monetary damages are not "persons" within meaning of Section 1983); *Johnson v. Mondrosch*, No. 13-3461, 2013 WL 12085239, at *3 (E.D. Pa. Dec. 3, 2013). (same). The analysis under the NJCRA is similar, and the NJCRA claims for monetary damages against these two defendants in their official capacities

---

[3]      Plaintiffs' brief in response to the motion to dismiss disclaims any such claim for damages, but the complaint is not so clear.

will likewise be dismissed *See Villegas v. Corr. Med. Servs., Inc.*, No. 14-7337, 2016 WL 3708218, at *1 (D.N.J. July 12, 2016) (dismissing NJCRA claims against individual defendants in their official capacities for damages because such suits represent only another way of pleading an action against an entity of which an officer is an agent where the entity is not considered a "person" under § 1983 and the NJRCA)

The claims for declaratory and injunctive relief against Sarah Davis and Sherry Yates stand on a different footing. In *Will*, the Supreme Court explained that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908)); *see also Nichols v. New Jersey*, No. 2014 WL 3694149, at *2 (D.N.J. July 23, 2014) (plaintiff seeking injunctive and declaratory relief against state official in official capacity is considered a person for purposes of Section 1983) (citing *Will*, 491 U.S. 71 n.10; *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994)). Therefore, defendants Sarah Davis and Sherry Yates are "persons" for purposes of injunctive and declaratory relief, and the claims against them in their official capacities will not be dismissed on that basis.

### B. Conditions-of-Confinement Cause of Action

Defendants Sarah Davis and Sherry Yates next argue that the complaint should be dismissed because the complaint fails to state a viable cause of action. The complaint alleges that the conditions of confinement, most notably the lack of heat, violated plaintiffs' rights under the Fourteenth Amendment and the New Jersey Constitution. A conditions-of-confinement claim brought by a civilly committed person is governed by the Fourteenth Amendment. *See Youngberg v. Romeo,* 457 U.S. 307, 324–25 (1982) (concluding that Fourteenth Amendment

rather than Eighth Amendment applies to involuntarily committed patients claim of safe conditions of confinement); *Artis v. McCann,* No. 11–3613, 2013 WL 2481251, at *3 (D.N.J. June 10, 2013) (stating that the rights of involuntarily committed patients "more appropriately arise under the Fourteenth Amendment" as opposed to the Eighth Amendment). The Fourteenth Amendment requires that committed persons not be subjected to conditions that amount to punishment, *Bell v. Wolfish,* 441 U.S. 520, 536 (1979); *Southerland v. Cnty. of Hudson,* 523 F. App'x 919, 921 (3d Cir. 2013) (noting that the central question in deciding whether a plaintiff has sufficiently alleged a Fourteenth Amendment conditions of confinement claim is whether the conditions constituted "punishment"), or exceed the proper bounds of professional discretion, *see Youngberg,* 457 U.S. at 321–22.

A central issue, then, is whether the conditions of confinement cross the line that separates institutional administration from punishment:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to that purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may permissibly infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon [civilly committed inmates].

*Bell,* 441 U.S. at 538–39; *see also Hubbard v. Taylor* (*Hubbard I*), 399 F.3d 150, 158 (3d

Cir.2005) (citation omitted), *Hubbard v. Taylor* (*Hubbard II*), 538 F.3d 229, 232 (3d Cir.2008).[4]

To constitute punishment, a deprivation must be both serious and intentional:

> Unconstitutional punishment typically includes both objective and
> subjective components. As the Supreme Court explained in *Wilson
> v. Setter,* 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991),
> the objective component requires an inquiry into whether "the
> deprivation [was] sufficiently serious" and the subjective
> component asks whether "the officials act[ed] with a sufficiently
> culpable state of mind." *Id.* at 298, 501 U.S. 294, 111 S. Ct. 2321,
> 115 L. Ed. 2d 271. The Supreme Court did not abandon this
> bipartite analysis in *Bell,* but rather allowed for an inference of
> mean rea where the restriction is arbitrary or purposeless, or where
> the restriction is excessive, even if it would accomplish a
> legitimate governmental objective.

*Stevenson v. Carroll,* 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell,* 441 U.S. at 538–39 & n. 20).

As to the "objective component," the court must consider "whether these conditions cause

inmates to endure such genuine privations and hardship over an extended period of time, that the

adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard II,*

538 F.3d at 233 (internal quotation marks and citations omitted). That analysis must encompass

the totality of the circumstances within an institution. *See id.* ("In conducting this excessiveness

analysis, we do not assay separately each of the institutional practices, but [instead] look to the

totality of the conditions.") (internal quotation marks and citations omitted). *See Cruz v. Main,*

No. 10–5605, 2011 WL 3625068, at *5 (D.N.J. Aug.15, 2011) (analyzing civilly committed

plaintiff's conditions of confinement claim using a totality of the circumstances analysis); *see*

*also Daniels v. Taylor,* No. 13–5510, 2014 WL 3955372, at *5 (D.N.J. Aug.13, 2014) ("In

analyzing whether ... condition of confinement violate the Fourteenth Amendment, a court

---

[4] The plaintiffs in *Hubbard I* and *Hubbard II* were pretrial detainees. Conditions-of-confinement claims
of pretrial detainees, like those of civilly committed persons, are analyzed under the Fourteenth
Amendment. *See Hubbard II,* 538 F.3d 230 (citing *Hubbard I,* 399 F.3d 150).

considers the totality of the circumstances within an institution.") (citing *Garcia v. Lancaster Cnty. Prison,* No. 13–2018, 2014 WL 176608, at *6 (E.D. Pa. Jan.15, 2014) (citing *Hubbard I,* 399 F.3d at 160; *Jones v. Diamond,* 636 F.2d 1364, 1368 (5th Cir.1981), *overruled in part on other grounds, Int'l Woodworkers of Am., AFL–CIO v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir.1986) (en banc)); *Wright v. Atl. Cnty. Justice Facility,* No. 10–6101, 2010 WL 5059561, at *6 (D.N.J. Dec.2, 2010) (considering the totality of the alleged deprivations to determine whether plaintiff had stated a Fourteenth Amendment conditions of confinement claim).[5]

---

[5] As I noted in a prior Opinion involving one of these plaintiffs:

> The precise contours of the standard to evaluate a conditions-of-confinement claim under the Fourteenth Amendment, as opposed to the Eighth Amendment, are not crystal clear. *See* Catherine D. Starve, *The Conditions of Pretrial Detention,* 161 U. PA. L. REV. 1009, 1009 (2013) (stating that the law as it applies to pretrial detainees for which the Fourteenth Amendment is applicable is unclear and inconsistent). Nevertheless, when I consider the minimum standards applicable to convicted prisoners, I must conclude at least that "the state has no *less* of a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures." *Grohs,* 984 F. Supp. 2d at 283 (citing *Youngberg,* 457 U.S. at 324); *see also City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (noting that the due process rights of a person are at least as great as the Eighth Amendment protections available to a convicted prisoner). Eighth Amendment standards are relevant at least to the extent that they define a floor beneath which the State cannot go. *See Grohs,* 984 F. Supp. 2d at 983 ("[I]t is true as a general matter that persons involuntarily committed are entitled to more considerate treatment and better conditions of confinement than are persons who are being criminally punished.") (citations omitted); *see also Fuentes v. Wagner,* 206 F.3d 335, 344 (3d Cir. 2000) ("'pretrial detainees are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.'") (quoting *Kost v. Kozakiewicz,* 1 F.3d 176 188 n. 10 (3d Cir. 1993)).

> Therefore, while cases involving the Eighth Amendment may not be dispositive here, they do provide some guidance.

*Grohs v. Santiago,* No. 13-3877, 2014 WL 4657116, at *4 n.3 (D.N.J. Sept. 17, 2014).

"Inmates 'have a right to adequate ventilation and a right to be free from extreme hot and cold temperatures[,] . . . '[b]ut the Constitution does not give inmates the right to be free from all discomfort.'" *Kates v. Bledsoe*, No. 11-0391, 2013 WL 4417656, at ** (M.D. Pa. Aug. 14, 2013) (quoting *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986)), *aff'd*, 547 F. App'x 93 (3d Cir. 2013); *Crosby v. Georgakopoulos*, No. 03-5232, 2005 WL 1514209, at *6 (D.N.J. June 24, 2005) ("Prisoners have a right under the Eighth Amendment to be free from extreme hot and cold temperatures.") (quoting *Freeman v. Berge*, No. 03-0021, 2003 WL 23272395, at *12 (E.D. Wis. Dec. 17, 2003)).

Plaintiffs allege that their cells were "ice cold" and that once the ventilation system was shut down, twenty degree temperature air was permitted to blow directly into the housing unit. (*See* Dkt. No. 1-1 at p.10) When blankets were distributed, Grohs's wool allergy was not accommodated, and Davis was not provided additional blankets at all. Both plaintiffs allege that the cold temperature caused them to shiver uncontrollably for hours and deprived them of sleep. (*See id.* at 13) These allegations sufficiently state a conditions-of-confinement claim under the Fourteenth Amendment. *Accord Yelardy v. Taylor*, No. 03-1032, 2006 WL 680660, at *8 (D. Del. Mar. 14, 2006) ("Yelardy alleges that his cell is so cold he is in constant pain, suffering from 'aching bones,' for which he was prescribed medication. He further alleges that his pain is exacerbated by the fact that he was not been able to procure enough blankets to keep him warm. This combination of conditions potentially amounts to punishment.") (citing *Crosby*, 2005 WL 1514209, at *6). Accordingly, defendants Sarah Davis and Sherry Yates are not entitled to dismissal of the complaint against them on this basis.

C. Personal Involvement

Defendants Sarah Davis and Sherry Yates also argue that the complaint should be dismissed against them because plaintiffs have failed to allege their personal involvement in the purported constitutional violation.

As to a claim for damages, a § 1983 plaintiff cannot rely solely on a *respondeat superior* theory. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*."). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

With respect to supervisors, the United States Court of Appeals for the Third Circuit has

> recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.,* 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

*Parkell v. Danberg*, No. 14-1667, 2016 WL 4375620, at *9 (3d Cir. Aug. 17, 2016); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

The complaint adequately alleges the personal involvement of defendant Sarah Davis. The complaint asserts that Sarah Davis toured the South Unit and appropriately caused extra blankets to be handed out to those residents who requested them (but not to plaintiffs, allegedly). Thus, she purportedly had actual knowledge of the unacceptably cold temperatures in the unit, but did not, or at least did not adequately, take measures to remedy them. She is the administrator

14

of the STU, and as such is allegedly responsible, not merely for acts of underlings, but for physical conditions in the unit.

As to defendant Sherry Yates, however, the complaint fails to allege the requisite personal involvement. The sole relevant allegation is that Yates was "aware that since October, 2014, the heating system for South Unit was in a state of disrepair and otherwise was not functioning properly." (Dkt. No. 1-1 at p.11)  That allegation is too general to permit Yates to be held personally responsible for the particular events alleged with respect to distribution of blankets and so on. The complaint fails to state how or in what fashion Sherry Yates was, or became, responsible for the temperature or heating system in the Unit. Nor is there any adequate allegation that Yates promulgated or implemented a policy or practice of denying the inmates of the STU protection from the cold.

As to a claim for prospective injunctive relief, however, the legal standard is different. The United States Court of Appeals for the Third Circuit has explained that a lack of personal involvement does not preclude a plaintiff from obtaining prospective injunctive relief for ongoing violations. *See Parkell v. Danberg*, -- F.3d -- No. 14-1667, 2016 WL 4375620, at *10 (3d Cir. Aug. 17, 2016) (citing *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (per curiam); *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70, 77 (3d Cir. 2011); *Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996). Rather, the focus is remedial; a defendant must be an appropriate person to implement injunctive relief, should it be ordered.

Here again, because Sarah Davis is administrator of the STU, it may be plausibly inferred that correction of the alleged deficiencies in the heating system is her ultimate responsibility. Yates, as an assistant administrator, might or might not have responsibility for the physical plant

15

systems. The complaint fails to allege that she is a proper defendant as to claims for injunctive or declaratory relief.

The motion to dismiss, insofar as it asserts failure to state a § 1983 claim, is granted as to Yates but denied as to Davis. The dismissals as to Yates are entered without prejudice to the submission of a proposed amended complaint within 30 days.

D. Qualified Immunity

Finally, Davis and Yates argue that the complaint should be dismissed against them because they are protected by qualified immunity. I note a threshold limitation. "[T]he defense of qualified immunity is available only for damages claims – not for claims requesting prospective injunctive relief." *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) (citing *Vance v. Barrett*, 345 F.3d 1083, 1091 n.10 (9th Cir. 2003); *Newman v. Burgin*, 930 F.2d 955, 957 (1st Cir. 1991) (Breyer, J.); *Torisky v. Schweiker*, 446 F.3d 438, 448 n.6 (3d Cir. 2006)); *Potts v. Holt*, 617 F. App'x 148, 153 n.7 (3d Cir. 2015) (citing *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 488 (3d Cir. 2014)). Thus, a qualified immunity defense would have no impact on plaintiffs' claims for injunctive relief against Davis or Yates.

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)). "[I]f a reasonable [official] is not on notice that his or her conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate." *Id.* "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the

law.'" *Id.* at 173–74 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

In deciding whether a governmental official is entitled to qualified immunity, a court examines: (1) whether the facts alleged make out a violation of a constitutional right; and (2) if so, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Pearson,* 555 U.S. at 232. Courts are permitted to address either prong of the analysis first in light of the circumstances at hand. *See id.* at 236. The defendant bears the burden to prove qualified immunity. *See Thomas v. Independence Twp.,* 463 F.3d 285, 292 (3d Cir. 2006) (citation omitted). The court is required to address qualified immunity as early as possible, and I do address it. That said, it is often, perhaps even ordinarily, "necessary to develop the factual record" in order to assess qualified immunity. *Newland v. Reehorse,* 328 F. App'x 788, 791 n.3 (3d Cir.2009).

Defendants argue that they are protected by qualified immunity for the following reasons:

> Plaintiffs have failed to demonstrate that the individual State
> Defendants, through their own individual actions, have violated
> Plaintiffs' Fourteenth Amendment rights or the New Jersey Civil
> Rights Act. Plaintiffs' Complaint merely states, in conclusory
> fashion that the State Defendants breached a recognized duty owed
> to Plaintiffs under the Fourteenth Amendment and the New Jersey
> Constitution. Compl. at 6. These statements fail to show how the
> Defendants violated Plaintiff's alleged federal or Constitutional
> rights, leaving Plaintiff's claims wholly unsupported. Moreover,
> the Complaint is limited to broad, conclusory statements, which
> fail to set forth how Davis . . . violated Plaintiff's Fourteenth
> Amendment rights, or their rights under the NJCRA.

(Dkt. No. 9-2 at p.20) I have already found that the complaint states a conditions-of-confinement claim against Davis (though not against Yates). Davis makes no argument that the rights of civil detainees were not clearly established. As previously explained, the Eighth Amendment clearly

provides at least a floor with respect to the conditions of confinement. Davis has failed to demonstrate at this early pleading stage that she is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the moving defendants' motion to dismiss is granted in part and denied in part. The claims against the NJDOC are dismissed with prejudice. The official capacity claims against defendants Sarah Davis and Sherry Yates for monetary damages are dismissed with prejudice. Plaintiffs' remaining claims against defendant Sherry Yates are dismissed without prejudice.

Remaining are the claims against Sarah Davis for injunctive and declaratory relief, as well as the individual-capacity claims against Sarah Davis for monetary relief. An appropriate order will be entered.


DATED:  September 27, 2016

_____
KEVIN MCNULTY
United States District Judge