Darryl Davis, # 174
Special Treatment Unit, Annex
P.O. Box 905
Avenel, New Jersey 07001-0905
(732) 718-7442

Steven Grohs, # 594
Special Treatment Unit, South
P.O. Box 905
Avenel, New Jersey 07001-0905
(732) 218-9424, Ext. 614

Plaintiffs, *pro se*

_____

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## VICINAGE OF NEWARK

| | | |
|---|---|---|
| DARRYL DAVIS and STEVEN GROHS, | : | |
| | : | Civ. No. 15-6943(KM)(JBC) |
| Plaintiffs, | | |
| | : | |
| -vs- | | |
| | : | |
| SHERRY YATES, SARAH | | |
| DAVIS, and SCO JOHN DOE, | : | **AMENDED COMPLAINT** |
| in Their Individual and | | **(42 U.S.C. § 1983)** |
| Official Capacities, | : | |
| | | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

_____

## PRELIMINARY STATEMENT

1. Plaintiffs, Darryl Davis and Steven Grohs, bring the instant civil rights action against various state defendants, for violating their rights secured by them under the Fourteenth Amendment to the United States Constitution, and arising from deplorable and inhuman conditions of their confinement.

2.    The  constitutional  violations  arose  when  state
defendants' took no reasonable actions in which to timely
make the necessary repairs to the steam/heating system of
South housing unit, during the closest winter months of the
Year of 2014, and when defendants knew or should have known
that that steam/heating system was in a state of disrepair
and about to altogether cease operating.

## PARTIES

3.    Plaintiff  Darryl  Davis  (hereinafter  "Plaintiff
Davis") is a permanently committed resident of the Special
Treatment Unit ("STU"). Plaintiff Davis resides in the Town
of Avenel, County of Middlesex, State of New Jersey.

4.    Plaintiff  Steven  Grohs  (hereinafter  "Plaintiff
Grohs") is a temporarily committed resident of the Special
Treatment Unit ("STU"). Plaintiff Grohs resides in the Town
of Avenel, County of Middlesex, State of New Jersey.

5.    At  all  times  pertinent,  Defendant  Sherry  Yates
("Defendant  Yates")  is  employed  by  the  New  Jersey
Department of Corrections ("NJDOC"), is the Administrator
at the STU, and she actually exercised and performed such
duties. Defendant Yates resides in or around the Town of
Avenel, County of Middlesex, State of New Jersey.

6.    At  all  times  pertinent,  Defendant  Sarah  Davis
("Defendant Davis") is employed by NJDOC, is the Assistant

2

Superintendent at the STU[1], and she actually exercised and performed such duties. Defendant Davis resides in or around the Town of Avenel, County of Middlesex, State of New Jersey.

7.    At   all   times   pertinent,   Defendant   John   Doe ("Defendant Doe") is employed by NJDOC, is a Senior Corrections Officer at the STU, and he actually exercised and performed such duties. Defendant Doe resides in or around the Town of Avenel, County of Middlesex, State of New Jersey.

8.    Defendants Yates, Davis and Doe are being sued in their individual capacity for declaratory relief and for monetary damages.

9.    Defendant Yates is being sued in her official capacity for injunctive relief.

10.   At all times pertinent, Defendants Yates, Davis and Doe were acting under color of law, ordinance, regulation, custom, or usage, of the State of New Jersey.

## STATEMENT OF THE FACTS

1.    Defendants use the 3rd tier of South housing unit for two purposes. One purpose is to house residents who have been placed in Temporary Close Custody ("TCC") status.

---

[1] Defendant Davis is currently employed at Edna Mahan Correctional Facility for Woman, in that facility's administration.

The second purpose is to house residents who have been placed in 'room/cell' or 'tier' Modified Activities Program ("MAP") status. The 3rd floor is a secure area within the secured custodial facility, as padlocked chain-link gates cordon off the area both at the bottom and at the top of the stairway.

2. Defendants use the 1st and 2nd floors to house residents who have been placed on 'tier' or 'program' MAP and on Treatment Refusal ("TR") status. Residents placed on TR and 'program' MAP statuses are cleared for and considered housed in open-population.

3. At all times pertinent, Plaintiff Davis is housed on the 3rd tier of South housing unit under TCC and MAP statuses. Plaintiff Grohs is housed on the 1st floor of South housing unit under TR status. Both plaintiffs occupy a one-man cell.[2]

4. Within any 24-hour period and during the week, Residents housed on all three (3) floors are repeatedly locked in a cell for each and every activity concerning the 3rd floor, which are many activities. In addition to about 9-hours overnight and about 3-hours for two count times, residents housed on all three (3) floors of South housing

---

[2] Each and every cell of South housing unit is no different than any other cell within a correctional setting.

4

unit are repeatedly locked in a cell for about 15-hours during the week and perhaps a little less on the weekends.

5. On or about October 15, 2014, the heating system was activated for South housing unit and right from the start, there were many problems that caused the system to improperly function. Among those problems, the steam pipes in the maintenance closet, adjacent to cells 100, 200, and 300, were leaking steam-water prior to the heating system being activated.

6. From the constant leaking of steam-water, stalactites consisting of a white pasty substance had formed in the ceiling below the mezzanine walkway of the second tier. To the present day, these stalactites are still tangible.

7. Because the leaks were not being repaired several remedy forms were submitted to facility officials by some residents and, as a result that the leaks were in close proximity to the entrance door of the housing unit, those residents took it upon themselves to place buckets underneath the leaks to prevent a hazard of water on the floor. To the present day, these buckets are underneath leaks.

8. In addition, the slop-sink closet adjacent to cell number 100 was, for as number of years, being flooded

5

from cascading steam-water from above. So much water had flowed through a non-water proof electrical box on the wall in this closet that it oozed some unknown substance that has also formed slimy stalactites. To the present day, steam-water constantly drips and stalactites are still tangible.

9. The slop-sink closet is has been consistently damp since at least the Month of April 2014 and steam-water drips on whoever is using the slop-sink.

10. On or about August 26, 2016, as witnessed by Plaintiff Grohs, Defendant Davis' predecessor, Assistant Superintendent Erica Stem, performed a visual inspection of the slop-sink closet and steam water had actually dripped on her.

11. Sometime in the Month of November 2014, somewhere in the maintenance closet on the second floor one or more steam pipes finally failed and a flood ensued on that floor. A deluge of hot water pored down to the first floor and in close proximity to the entrance door of the housing unit.

12. Once the steam-pipes failed what little warm air that was entering the housing unit and cells turned freezing cold, about 45 degrees. For weeks following the failure, at most, 50 degree air was entering the housing

6

unit and each cell on the 1st, 2nd and 3rd floors and through the ventilation system.

13.   In an effort to prevent the blowing 45-50 degree air in their cells, many residents, including Plaintiff Grohs, were forced to pile their personal property against the wall to block the vent.

14.   For about three days Plaintiff Davis had no personal property, as it is Defendant Yates' custom or policy to delay the delivery of personal property to residents who have been initially placed in TTC on the 3rd tier of South housing unit.

15.   Prior to the heating system being activated in October 2014, Plaintiff Grohs had been housed on South housing unit for about six months and the November 2014 failure of the steam pipe(s) was not the first such incident, as one or more pipes had failed one or twice before.

16.   On or About December 23, 2014, Defendant Doe purposefully confined Plaintiff Davis to a cell on the 3rd tier of South Unit with none of his personal property. At this time, Plaintiff Davis was wearing only undergarments, t-shirt, jeans, and socks, and he was not otherwise prepared to be outside in the weather or for cold temperatures.

7

17. Plaintiff Davis had verbally requested Defendant Doe to retrieve his personal blankets from his withheld property; Defendant Doe refused Plaintiff's request and informed Plaintiff Davis to submit a remedy form to NJDOC custody officials.

18. Defendant Doe knew or should have known that the cell he was confining Plaintiff Davis to was at lest 50 degrees, because when he entered South housing unit it was cold enough so as to allow one to see his/her own breath.

19. At the time Defendant Doe was placing Plaintiff Davis in the aforesaid cell, he knew or should have known that the South Unit was not being heated and was too cold.

20. Defendant Doe was acting under the policies, practices and procedures, established by Defendant Yates, when he willingly placed Plaintiff Davis in an iced cold cell.

21. It was reported by local news stations, including NJTV News (channel 50-1), that the winter of the Year 2014 was one of the coldest winters on record.

22. Between the Months of October 2014 and March 2015, Plaintiff Grohs was repeatedly locked in an iced cold cell because there was not any heat being supplied to his assigned housing unit.

8

23. For about the whole Month of December, 2014, and because iced cold 50 degree air was blowing into the cells on South Unit and through the ventilation system, maintenance personnel[3] shut the system off, causing no fresh air to be supplied to the cells, for a prolonged length of time, and in which for Residents to breathe.[4]

24. Once the ventilation system was shut down, that permitted 20 degree temperature air to blow directly onto the housing unit through a vent measuring about 6 feet by 4 feet, passing through an exterior concrete wall, and designed as an exhaust from positive air pressure.

25. At all pertinent times, housing unit officers of South unit brought into the facility a small space heater and placed them near where they sat because frigid cold air was emanating from the exhaust vent and could be felt at the officers' desk area.

26. On or About December 23, 2014, Defendant Davis visited South housing unit. At this time, Plaintiff Grohs

---

[3] Maintenance personnel, who performed maintenance repairs at the STU, are sent over from the Adult Diagnostic & Treatment Center, as the STU has no maintenance personnel of its own. See Jason Davis v. Sherry Yates, et al., 2014 U.S. Dist. LEXIS 137694. The Court forwarded a copy of the complaint to Defendant Yates.

[4] Several weeks ago and up to October 24, 2016, maintenance personnel had the ventilation system of South housing unit shut off.

9

verbally complained to her about the freezing cold temperature of the housing unit. In response, Defendant Davis stated "[w]e are aware of the problem and later-on I will return with extra blanket for you guys."

28. On or About December 23, 2014, Defendant Davis returned to South housing unit and she came with a box of woolen blankets, which the housing unit officer passed out to residents whom requested them.

29. When the woolen blankets were being passed out, it was at this time that Plaintiff Grohs verbally informed Defendant Davis that he was highly allergic to wool and he requested that he be provided with a cotton blanket.

30. Although Defendant Davis stated to Plaintiff Grohs that she would look into providing him with a cotton blanket, he never was.

31. When woolen blankets were passed out on South housing unit, none were passed out to any Residents locked in a cell on the third-tier, including Plaintiff Davis.

32. At Defendant Davis' command, the housing unit officer made a list of every resident who received an extra woolen blanket.[5] Neither the name of Plaintiff Davis nor the name of Plaintiff Grohs was recorded on that list.

---

[5] Names of residents were recorded so as to ensure that the woolen blankets could be collected and returned to storage.

33. Both Defendants Yates and Davis were aware that since October 2014 the heating system for South housing unit was in an utter state of disrepair, otherwise was not proving a reasonable degree of heat, and these defendants took no action to reasonably effect a remedy before the system altogether failed.

34. It is a custom, policy, or practice of the NJDOC to require each visiting administrator to sign the daily log book (olive-green in color) maintained by the housing unit officer.

35. During the Months of December 2013 through to March 2014, and when Plaintiffs' assigned housing unit was freezing cold, Defendant Yates visited the housing unit several times, for reasons unknown, and she signed the daily log book or her visits to South housing unit were otherwise recorded in same.

36. Defendant Yates is required but did not ensure that proper ventilation and room temperatures were maintained in all cells occupied by any resident, including by Plaintiff Davis and Plaintiff Grohs.

37. As a direct and proximate result that Plaintiff Davis was not provided with a blanket, as other similarly situated residents, he was reduced to covering himself with a partially damp State bath towel, measuring about 2 feet

11

wide and three feet long, which caused him to shiver uncontrollably for hours and days at a time and which caused him to be deprived of restful sleep.

38. As a direct and proximate result that Plaintiff Grohs was not provided with an extra blanket, as other similarly situated residents, he shivered uncontrollably for hours and days at a time and which caused him to be deprived of restful sleep.

39. As a direct and proximate result that Plaintiffs Davis and Grohs were housed in freezing cold temperatures and for a prolonged period of time, they both suffered from severe dry and cracked skin on, among other areas of their body, their lips, fingers, and toes, which were extremely painful and bled profusely.

40. As a direct and proximate result that Plaintiffs Davis and Grohs were housed in freezing cold temperatures and for a prolonged period of time, they both suffered from acute aches and pains to their lower-back and/or legs.

41. As a direct and proximate result that Plaintiff Davis and Grohs were housed in freezing cold temperatures and for a prolonged period of time, their immune system was weakened to the point that they suffered from the common cold and/or suffered from reoccurring flu-like symptoms.

**ARGUMENT**

**COUNT I**

**Asserted, Pursuant to 42 U.S.C. §1983,**
**Against Defendants Yates, Davis and Doe for Violating**
**Plaintiffs Davis' and Grohs' Fourteenth Amendment Rights**
**From the Failure to Provide Safe Conditions of Confinement**

41. The Due Process clause of the Fourteenth Amendment of the United States Constitution required Defendants to take reasonable measures to ensure the safety and well being of plaintiffs. In other words, once the Government deprives a person of his liberty, the Government assumes some responsibility for that person's safety and wellbeing.

42. The state has a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures and because civil commitment is not punishment, the hardships of civil confinement cannot be punitive; they must bear some reasonable relation to the nonpunitive purpose for which persons are committed.

43. Plaintiffs' allege that both Defendants Yates and Davis knew or should have known that before the heating system for South housing unit was shut off that is was in a state of disrepair and, while armed with that knowledge, they took no reasonable action to cause any repairs to the many problems connected to the defunct heating system. The

13

many problems persisted for a number of years before the winter months of 2014-15.

45. Plaintiffs were locked in a cell for at the most 15-hours each day and when the ventilation system was blowing 45-50 degree freezing cold air into their cells. This alone has caused plaintiffs to suffer physical injuries, including emotional distress.

46. When anyone, including Defendants Yates and Davis, first enters South housing unit it would have been absolutely impossible for them not to see the dripping water, the stalactites hanging from the ceiling, and the buckets underneath both.

47. Seeing the dripping water, the stalactites hanging from the ceiling, and the buckets underneath both, any concerned person with the power to make changes would have not only inquired about the existence of these issues but would have timely effectuated a remedy. Here, Defendants Yates and Davis simply walked past the plainly obvious as though these issues did not exist.

48. During record temperatures for Northeastern United States, Defendants Yates and Davis were acquiescent, for a prolong period of time, about the South housing unit reaching freezing cold temperatures.

14

49. Several times in the past when the ventilation system was shut off, it was clearly evident that 20 degree outside air was entering the housing unit, from an exhaust vent adjacent to cell number 126.

50. Being in the best possible position to cause a solution to the problem, it is inexplicable why defendants did not cause the blocking of the exhaust vent. A piece of plywood would have sufficed but nothing was installed during the whole time the heating system was shut down.

51. At all times relevant, when Defendants Yates and Davis had visited South housing unit it was inescapable for them not to have known that outside freezing cold air, from the outside, was entering the housing unit. This was common knowledge to anyone who came anywhere near cell numbers 123-126, especially 126.

52. Moreover, standing at the housing unit officers' desk area, a frigid draft was emanating from the exhaust vent and when both Defendants Yates and Davis were at the desk to sign the logbook. It would have been impossible for them to have not felt the frigid draft.

53. Feeling the frigid draft, any concerned person with the power to make changes would have inquired about where the freezing cold breeze was coming from and would have timely effectuated a remedy. Here, Defendants Yates

and Davis simply ignored the plainly obvious as though the frigid draft did not exist.

53.  When Defendants Yates and Davis were at the officer's desk, they would have had to see the housing unit officers' personal space-heaters that they were using, as they were in plain sight. If custody staff implicated a need for heat, then surly plaintiffs had a similar need for same.

54.  When Defendant Davis passed-out extra woolen blankets on South housing unit, she took absolutely no concern for any resident on the third tier, including Plaintiff Davis, and she failed to accommodate Plaintiff Grohs' allergy to wool.

55.  That Defendant Davis passed-out extra woolen blankets is an action being too little too late, as by then South housing unit was beyond any extra blankets and, to effect a reasonable solution to the problem, the situation demanded a more drastic action then merely distributing some blankets for a limited number of residents, excluding plaintiffs.

56.  At the time Defendant Doe escorted Plaintiff Davis into South housing unit and up to the 3rd floor, it was plainly obvious to him that the housing unit was freezing cold.

16

57. While knowing that South housing unit was freezing cold Defendant Doe striped search[6] Plaintiff Davis and then locked him in a cell that was clearly unheated.

58. At the time when Defendant Doe shut the cell door, Defendant Doe was the last person to have contact with Plaintiff Davis. Being a senior custody official, Defendant Doe was in a good position to cause Plaintiff Davis' receipt of his personal blanket and coat. Instead of honoring Plaintiff Davis' request, Defendant Doe walked out of the housing unit and he did not return.

59. Defendant Doe knew or should have known that submitting a remedy form was not a viable solution to the absence of heat and Plaintiff Davis' inability to keep warm. Defendant Doe simply showed no care or concern for Plaintiff Davis' safety.

60. Therefore, Defendants Yates, Davis and Doe are personally involved in the violations to plaintiffs' Fourteenth Amendment rights and they have both actively participated in the failure to provide plaintiffs with safe conditions of confinement.

61. Wherefore, Defendants Yates, Davis and Doe are liable for violating plaintiffs' Fourteenth Amendment

---

[6] It is a common policy, practice, or procedure to strip search almost every resident who is being placed in TCC status, despite whether there is probable cause to do so.

17

rights as a direct and proximate result that they failed to provide plaintiffs with safe conditions of confinement.

## COUNT II

### Asserted, Pursuant to 42 U.S.C. §1983, Against Defendants Yates, Davis and Doe for Violating Plaintiffs Davis' and Grohs' Fourteenth Amendment Rights Stemming From Their Abuse of Power

62. Plaintiffs repeat and reassert the foregoing allegations, set forth within the preceding point heading.

63. The due process clause of the Fourteenth Amendment states, in pertinent part, that no state shall deprive any person of life, liberty, or property, without due process of law. The due process clause contains a substantive component barring certain government actions regardless of the fairness of the procedures used to implement them.

64. Plaintiffs Davis and Grohs allege that they were placed and locked in a freezing cold cell, for a prolonged period of time. Plaintiff Davis was without any articles of his personal property, including with no coats or blankets.

65. When Defendant Doe locked Plaintiff Davis in the freezing cold cell, Defendant Doe was acting on the customs, practices and procedures established by Defendant Yates.

66. Defendant Yates authorized Plaintiff Davis' placement in TCC, as residents are only placed on this status upon the recommendation of the Administrator.

67. The NJDOC requires the Administrator or a designee to ensure that cells used for the purpose of TCC placements are inspected daily to ensure that those cells are receiving or have proper ventilation, lighting, room temperatures, cleanliness and properly functioning sanitary fixtures.[7]

68. Defendant Yates had a duty to ensure that Plaintiffs Davis and Grohs were placed and/or housed in a cell that had proper ventilation and room temperatures. Failing that, Defendant Yates had a duty to ensure that Plaintiff Davis was timely given his personal property, consisting of his coats and blankets, because the cell was freezing cold and that Plaintiffs Davis and Grohs were provided with extra blankets, with concern for Plaintiff Grohs' allergy.

69. The purpose of the State of New Jersey to confine plaintiffs to the secure custody facility, identified as the STU, is to protect society from dangerous and provide sex offender specific treatment to sexually violent predators. There is no legitimate purpose to confine

---

[7] See N.J.A.C. §§ 10A:1-2.1(c) and 10A:5-2.12(a) and (b).

plaintiffs under inhuman conditions. Specifically, Defendant Yates owed plaintiffs a duty to ensure that the resident population, including plaintiffs, was receiving adequate shelter from freezing cold temperatures.

70. Defendant Yates breached recognized duties when she failed to instruct Defendant Doe or any other custody official that residents placed in TCC shall timely receive blankets and coats that are within the residents' personal property.

71. Defendant Doe breached recognized duties when he failed to do what was necessary to ensure that Plaintiff Davis timely received his personal blankets and coats that were within his personal property.

72. Defendant Davis breached recognized duties when she failed to timely provide a non-woolen or cotton blanket to Plaintiff Grohs, when she had provided woolen blankets to other similarly situated residents.

73. Defendant Davis breached recognized duties when she failed to timely provide a woolen blanket to Plaintiff Davis, as she had provided to other residents.

74. Upon Defendants Yates', Davis' and Doe's breach of their recognized duties they instantly abused the power bestowed upon them by the State of New Jersey.

75. Therefore, Defendants Yates, Davis and John Doe are personally involved in the violations to plaintiffs' Fourteenth Amendment rights when they abused the power bestowed upon them by the State of New Jersey.

76. Wherefore, Defendants Yates, Davis and John Doe are liable for violating plaintiffs' Fourteenth Amendment rights when they abused the power bestowed upon them by the State of New Jersey.

## COUNT III

### Asserted, Pursuant to42 U.S.C. § 1983, Against Defendant Yates for Violating Plaintiffs Davis' and Grohs' Fourteenth Amendment Rights, Under the Theory of Supervisory Liability.

77. Plaintiffs repeat and reassert the foregoing allegations, set forth within the preceding point heading.

78. Professional decision-makers may be liable for violating the substantive due process rights of an involuntarily institutionalized plaintiff if their conduct was such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on a judgment.

79. Defendant Yates is considered a professional decision-maker, and as chief-administrator of the STU she is the ultimate decision-maker regarding the operation of

21

the STU. Defendant Yates' decision to be acquiescent towards the maintenance personnel's failure to effect the necessary repairs to the steam/heating system is not based on a judgment, but she was deliberately indifferent.

80. Defendant Yates' professional judgment in fact was exercised. Providing some means of warmth to plaintiffs during the coldest winter months is not an option or choice; however, it is a mandatory and conscience action.

81. Plaintiffs have alleged a claim for supervisory liability under § 1983, and they identify the specific supervisory practice or procedure Defendant Yates failed to follow, and shows that: (1) the existing policy or practice created an unreasonable risk of the Fourteenth Amendment injury; (2) the Defendant supervisor(s) were aware that the unreasonable risk was created; (3) Defendant supervisor(s) were indifferent to that risk; and (4) the injury resulted from the policy or practice.

82. Pursuant to Legislative intent and under N.J.S.A. § 30:4-27.34, et seq., Defendant Yates possesses the authority of the NJDOC and she is responsible for the operation of any facility designated for the custody, care, control and treatment of sexually violent predators.

83. Pursuant to N.J.A.C. § 10A:35-1.1(c), the NJDOC, and specifically Defendant Yates, shall be responsible for

the operation of any facility designated for the custody, care, control and treatment of sexually violent predators.

84. Pursuant to N.J.A.C. § 10A:35-1.1(d), appropriate representatives of the Departments of Human Services and NJDOC shall participate in an interagency oversight board to facilitate the coordination of the internal management procedures and policies of the facility.

85. Defendant Yates is a representative of interagency oversight board and she is an active participant in matters concerning the day-to-day operation of the STU. As such, Defendant Yates has or should have facilitated the coordination of internal management procedures to govern inspections and emergent maintenance repairs of heating/steam system. She did not.

86. Maintenance personnel act as designees of Defendant Yates and those individuals failed to adequately inspect the heating equipment and/or to perform emergent maintenance repairs of the steam system.

87. As a direct and proximate result of the failure of the maintenance personnel to adequately inspect the heating equipment and/or to perform emergent maintenance repairs of the steam system, that failure caused or contributed to unreasonable risk of plaintiffs' Fourteenth Amendment injuries.

88. Such maintenance supervisor(s), who are employed under Defendant Yates, were indifferent to the risk of plaintiffs' Fourteenth Amendment injuries when they failed altogether to take reasonable action in which to prevent the heating system from both being be in a state of disrepair and shutting down.

89. The injuries sustained by plaintiffs, from them being housed in a freezing cold housing unit and/or a cell for prolonged periods of time have resulted from Defendant Yates' policies and/or practices.

90. Therefore, Defendant Yates is personally involved in the violations to plaintiffs' Fourteenth Amendment rights and from her improper supervisory over the maintenance personnel.

91. Wherefore, Defendants Yates is liable for violating plaintiffs' Fourteenth Amendment rights and from her improper supervisory over the maintenance personnel.

**PRAYER FOR RELIEF**

92. Plaintiffs Davis and Grohs demand judgment against Defendants Yates, Davis, and Doe as follows:

    a) Declaratory judgment be entered against:

        1. Defendants Yates and Davis for confining Plaintiffs Davis and Grohs in a building that permitted inhuman conditions to

24

persist, during the Months of December 2014 through to March 2015;

2. Defendants Yates, Davis and Doe that they have violated Plaintiff Davis' Fourteenth Amendment rights as to Count I;

3. Defendants Yates and Doe that they have violated Plaintiff Davis' Fourteenth Amendment rights as to Count II;

4. Defendant Yates, that she has violated Plaintiff Davis' Fourteenth Amendment rights as to Count III;

5. Defendants Yates and Davis that they have violated Plaintiff Grohs' Fourteenth Amendment rights as to Count I;

6. Defendants Yates and Davis that they have violated Plaintiff Grohs' Fourteenth Amendment rights as to Count II;

7. Defendant Yates that she has violated Plaintiff Grohs' Fourteenth Amendment rights as to Count III;

8. Defendants Yates, Davis and Doe that during the Months of December 2014 through to March 2015 it was the coldest

temperatures for the Northeastern United
States having been recorded;

9.  Defendants Yates, Davis and Doe that they
    caused Plaintiff Davis to suffer
    measurable emotional distress or mental
    anguish;

10. Defendants Yates, Davis and Doe that they
    caused Plaintiff Davis to suffer
    measurable pain and suffering;

11. Defendants Yates and Davis that they
    caused Plaintiff Grohs to suffer
    measurable emotional distress or mental
    anguish;

12. Defendants Yates and Davis that they
    caused Plaintiff Grohs to suffer
    measurable pain and suffering; and,

b) Punitive damages is entered against:

1.  Defendant Yates in the amount of $20,000
    for violating Plaintiff Davis' Fourteenth
    Amendment rights from her failure to
    provide safe conditions of confinement;

2.  Defendant Davis in the amount of $20,000
    for violating Plaintiff Davis' Fourteenth

Amendment rights from her failure to provide safe conditions of confinement;

3.  Defendant Doe in the amount of $7,500 for violating Plaintiff Davis' Fourteenth Amendment rights from his failure to provide safe conditions of confinement;

4.  Defendant Yates in the amount of $20,000 for violating Plaintiff Davis' Fourteenth Amendment rights stemming from her abuse of power;

5.  Defendant Davis in the amount of $20,000 for violating Plaintiff Davis' Fourteenth Amendment rights stemming from her abuse of power;

6.  Defendant Yates in the amount of $20,000 for causing Plaintiff Davis to suffer measurable emotional distress;

7.  Defendant Davis in the amount of $20,000 for causing Plaintiff Davis to suffer measurable emotional distress;

8.  Defendant Doe in the amount of $7,500 for causing Plaintiff Davis to suffer measurable emotional distress;

9.  Defendant Yates in the amount of $20,000 for causing Plaintiff Davis to suffer measurable pain and suffering or mental anguish;

10. Defendants Davis in the amount of $20,000 for causing Plaintiff Davis to suffer measurable pain and suffering or mental anguish;

11. Defendant John Doe in the amount of $7,500 for causing Plaintiff Davis to suffer measurable pain and suffering or mental anguish;

12. Defendant Yates in the amount of $7,500 for violating Plaintiff Davis' Fourteenth Amendment rights from her failure to adequately supervise the repairs made to the steam/heating system and by the maintenance personnel;

13. Defendant Yates in the amount of $20,000 for violating Plaintiff Grohs' Fourteenth Amendment rights from her failure to provide safe conditions of confinement;

14. Defendant Davis in the amount of $20,000 for violating Plaintiff Grohs' Fourteenth

Amendment rights from her failure to provide safe conditions of confinement;

15. Defendant Yates in the amount of \$20,000 for violating Plaintiff Grohs' Fourteenth Amendment rights stemming from her abuse of power;

16. Defendant Davis in the amount of \$20,000 for violating Plaintiff Grohs' Fourteenth Amendment rights stemming from her abuse of power;

17. Defendant Yates in the amount of \$7,500 for violating Plaintiff Grohs' Fourteenth Amendment rights from her failure to adequately supervise the repairs made to the steam/heating system and by the maintenance personnel;

18. Defendant Yates in the amount of \$20,000 for causing Plaintiff Grohs to suffer measurable emotional distress;

19. Defendant Davis in the amount of \$20,000 for causing Plaintiff Grohs to suffer measurable emotional distress;

. 20. Defendant Yates in the amount of \$20,000 for causing Plaintiff Grohs to suffer

29

measurable pain and suffering or mental anguish; and,

21. Defendants Davis in the amount of $20,000 for causing Plaintiff Grohs to suffer measurable pain and suffering or mental anguish;

c) Injunctive relief is entered against Defendant Yates in which to:

1. Cease and desist in the practice of providing woolen blankets to any resident who is allergic to woolen blankets and to cause the provision of a cotton blanket to Plaintiff Grohs;

2. Cause blankets to be provided to plaintiffs when the temperature of plaintiffs' housing unit(s) drops below 60 degrees;

3. Cause the official recording of the temperature of plaintiffs' housing unit(s), when the housing unit temperature falls and remains below 60 degrees;

4. Cause plaintiffs being provided with a copy of each and every official recording of the temperature of plaintiffs' housing

30

unit(s), while the temperature remains below 60 degrees;

5.  Cause the implementation of any and all practices, policies, or procedures at the STU and in which to ensure the prompt delivery of necessary personal property to any resident placed on TCC status, i.e. personal blankets and coats during the winter months;

6.  Cause the schooling of each and every subordinate of Defendant Yates as to any and all newly implemented policies, or procedures, as demanded above;

7.  Cause maintenance personnel to block or close off the exhaust wall vent adjacent to cell # 126 and when the ventilation system is shut off or otherwise when that vent is allowing freezing cold air to enter plaintiffs' housing unit(s); and,

8.  Cause emergent repairs to be made to the steam/heating systems of plaintiffs' housing unit(s) and to notify both Plaintiffs Davis and Grohs, in writing, as

31

> to any such repairs being performed, when
> deemed necessary.

d) To appoint a monitor in which to facilitate
future and prompt repairs to the steam/heating
system for any housing unit of plaintiffs;

e) To award plaintiffs any additional and further
relief the Court deems appropriate; and,

f) To award plaintiffs costs of court and, if
applicable, reasonable attorney fees.

DATED: 10/27/2016

DARRYL DAVIS

STEVEN GROHS

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), plaintiffs demand a
trial by jury as to all triable issues.

DATED: 10/27/2016

DARRYL DAVIS

STEVEN GROHS

32

Darryl Davis, # 174
Special Treatment Unit, South
8 Production Way, P.O. Box 905
Avenel, New Jersey 07001-0905
(973) 718-7442

Steven Grohs, # 594
Special Treatment Unit, South
8 Production Way, P.O. Box 905
Avenel, New Jersey 07001-0905
(732) 218-9424, Ext. 614

Plaintiffs, *pro se*

                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
                    VICINAGE OF CAMDEN

_____

STEVEN GROHS,                :       Civil Action No.
            Plaintiff,       :       09-5273 (NLH/AMD)


                             :
                                     **CERTIFICATE OF SERVICE**
SHERRY YATES, et al.,        :       **TO AMENDED COMPLAINT**

            Defendants.      :

_____

        I, Darryl Davis, Plaintiff *pro se*, hereby certify that
I have mailed a copy of Plaintiff's Amended Complaint, via
regular U.S. mail, to: Ashley Gagnon, D.A.G., Office of the
Attorney General, Department of Law & Public Safety, 25
Market St., P.O. Box 116, Trenton, New Jersey 08625-0116.


DATED: 10/27/2016

                                    DARRYL DAVIS